The Bank of Buffalo v. Lowry.

day. On the 13th, the judge made the order of stay, which was, on the same day, served on the attorney for the plaintiffs. The motion was made on the ground that more than eight days had elapsed between the day of the decision, (26th March,) and the day of the order, within the meaning of the 81st rule of this court.

*M. T. Reynolds,* contra, insisted that the eight days ran from the time of filing the decision and entering the rule for a new trial, and not from the day when the judge made and signed his decision. He said, if this were not so, he held an affidavit excusing the delay ; on which he asked a stay with a view to a hearing of the cause upon the calendar.

---

## The Bank of Buffalo *vs.* Lowry and others.

Where trick and management is resorted to in the retainer of an attorney and in the service of a plea for the purpose of delaying the plaintiff and preventing a trial, and the plaintiff in consequence thereof, after due diligence, is unable to serve a notice of trial in season for the circuit where the venue is laid which he might have done but for such management, the retainer and plea may both be treated as nullities, and the default of the defendants entered as for not pleading.

It seems that a *frivolous demurrer* put in to prevent the trial of a cause may be disregarded, and the *frivolousness* of the pleading will be deemed a sufficient answer to a motion to set aside an inquest as irregularly taken.

*S. Stevens,* for the defendants, moved to set aside a default for want of a plea, on the ground of iregularity, it having been entered after the service of a notice of retainer and plea on the agent of the plaintiff's attorney in the city

of *New-York*.   The service was on the 9th of March, 1840. The action was against the defendants as the maker and endorsers of a promissory note, and the plea was served on the last day for pleading.   The attorney for the defendants resided in the county of *Cortland*, his clients in the county of *Chatauque*, and the plaintiff's attorney and *Buffalo*.   The venue was laid in the county of Niagara, the circuit in which was near at hand.   On diligent inquiry the plaintiff's attorney failed to ascertain the place of residence of the defendants' attorney ; and finally being satisfied that the retainer was a trick to delay the cause, treated it as a nullity and perfected judgment by default as for want of a plea.   The plaintiff's attorney had failed, on search, to find that the defendants' attorney had an *agent* in Albany, though now, on production of the agency list, it appeared that he had an agent there.   The plaintiff's attorney inquired of one of the defendants, who said he never heard of such a person as the attorney who had put in the plea.   The defendants were embarrassed in their circumstances and had been frequently sued.   Had the plaintiff's attorney succeeded in ascertaining the residence of the defendants' attorney, notice of trial might have been served in time for the Niagara circuit.

*M. T. Reynolds*, contra.

*By the Court*, COWEN, J.   It is impossible to resist the conclusion, that this retainer, and the proceeding upon it were for the mere purpose of delay.   The retainer was of a remote and obscure attorney, who instituted a course of serving papers through a distant agency still farther calculated to conceal the place of his residence from the plaintiff's attorney, and in itself to work a delay that might have thrown the cause over the circuit, which was near at hand. The defendants' attorney swears that his retainer was *bona fide*, but he forbears to account for the defendants passing over a numerous and well known class of the profession residing much nearer the defendants, or the sending papers from *Cortland* to the city of *New-York* for service on an

agent there, when it is obvious that a direct service would have been much more convenient for him.   No merits are sworn to, though one of the defendants makes an affidavit. Looking at the circumstances as matter of evidence, I am satisfied the course pursued here by the defendants and their attorney was a fraud on the rules of legal practice.   This fully warranted the plaintiff's attorney in treating the retainer and plea as nullities, and proceeding as if no attorney had been retained.

I will not say that this sort of expedient by failing debtors, is absolutely null to all intents and purposes.   The plaintiff's attorney must in such cases do his best to avoid the consequences of the fraud, by the ordinary service of papers and other steps, as if the defendant's conduct were *bona fide ;* but if he cannot do so, I feel entirely justified, both on principle and authority, in saying that he may take such other method of practice as shall avoid the consequences intended to be worked by the trick.   It is like the case of a party skulking to avoid the service of a rule, with the view to an attachment.   The law of the court is very strong, that this must be personal, for it is in the nature of process, and the party may finally be committed.   Yet where he keeps out of the way to avoid the service, you may do the best you can ; and an attachment may be granted on proof that due means of service have been taken and baffled.   *Green* v. *Prosser,* 2 *Dowl. Pr. Cas.* 99.   As there remarked by Lord Lyndhurst, C. B.: " All these cases depend upon their own particular circumstances."   And being satisfied on the evidence that the party kept out of the way, in consequence of which the regular mode of service failed, the court considered this equivalent to the usual mode.   It is a solecism in such case, for the party to complain of injury by the step.   Its real nature is to counteract his own fraud, an injury intended by him.   With what propriety can he clamor for the ordinary notice, when he has done all in his power to prevent it, or defeat its effect ?   It may be said you must move the court *in limine,* for leave to disregard the retainer or plea, as you do for a substituted service.   But that is not always so.   A frivolous demurrer

interposed to prevent carrying down the cause to trial is often disregarded, and always may be treated as a nullity; and the frivolity of the demurrer shown in reply to a motion which seeks to use it, in order to set aside a trial as irregular. It is by no means an extenuation, much less a protection to fraud, that legal machinery is resorted to in its perpetration. This is the doctrine familiar to the criminal law, which treats the proceeding as absolutely void; and has even followed it with capital punishment. 2 *Russ. on Cr.* 143, *Am. ed. of* 1836.

Motion denied.